1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 12-CR-00661(SLT)
                                 :
                                 :
                                 :
     -against-                   : United States Courthouse
                                 : Brooklyn, New York
                                 :
                                 :
ALI YASIN AHMED,                 : Tuesday, June 24, 2014
                                 : 11:10 a.m.
          Defendant.             :
                                 :
                                 :
- - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:  LORETTA E. LYNCH, ESQ.
                        United States Attorney
                        Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                     BY: SETH DUCHARME, ESQ.
                          Assistant United States Attorney

For the Defendant:   LAW OFFICE OF SUSAN G. KELLMAN
                          25 Eighth Avenue
                          Brooklyn, New York 11217
                     BY: SUSAN G. KELLMAN, ESQ.

                     LAW OFFICES OF EZRA SPILKE
                          25 8th Avenue, Suite C
                          Brooklyn, New York 11217
                     BY: EZRA SPILKE, ESQ.

Court Reporter:      SHERRY J. BRYANT, RMR, CRR
                     225 Cadman Plaza East
                     Brooklyn, New York 11201
                     sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcript.

PROCEEDINGS 2

1           (In open court.)
2           (Defendant enters the courtroom.)
3           COURTROOM DEPUTY:  Criminal cause for status
4    conference, Docket Number 12-CR-661, the United States of
5    America versus Ali Ahmed.
6           Counsel, please state your names for the record,
7    beginning with the government.
8           MR. DuCHARME:  For the United States, Seth DuCharme.
9    Good morning, Your Honor.
10          THE COURT:  Good morning.
11          MS. KELLMAN:  For Mr. Ali Ahmed, Susan Kellman.  I'm
12   assisted at counsel table, Your Honor, this morning by Ezra
13   Spilke.  And my client is present and is being assisted by the
14   Swedish interpreter.  Good morning, Judge.
15          THE COURT:  Good morning.  Has the interpreter been
16   sworn?
17          COURTROOM DEPUTY:  Not yet, Judge.
18          (Interpreter sworn.)
19          COURTROOM DEPUTY:  Please state your name for the
20   record.
21          THE INTERPRETER:  Magna Czagany.
22          THE COURT:  We've scheduled this for a status
23   conference.  Who is going to report?
24          MR. DuCHARME:  I think I can give the Court an
25   update.  Since we were last before the Court with this

1  defendant, Your Honor, the government has produced additional
2  discovery, both classified and unclassified.  We filed our
3  CIPA Section 4 motion.
4         With respect to arranging the joint defense meeting
5  that we had talked about, we made substantial steps in that
6  direction.  There are just a few more formalities, but there's
7  really been no resistance to the meeting so it's a matter of
8  logistics.  We expect that to happen probably in the next 30
9  to 60 days.
10        I think the matter that was addressed by Mr. Stern
11 when we were before Your Honor with Defendant Yusef was any
12 adjustments that might be anticipated with respect to the
13 scheduling order.  And I've talked to Ms. Kellman this morning
14 and confirmed, essentially, the same understanding that we had
15 with Mr. Stern, which is that the defense is putting together
16 a set of proposed adjustments to the scheduling order which
17 might move dispositive motions from July to the early fall,
18 perhaps September, and then hearings on those motions to the
19 late fall.
20        When the government receives the proposed amendments
21 to the scheduling order from defense counsel, I expect we'll
22 be able to agree and then provide the Court with a joint
23 proposed amended scheduling order.
24            THE COURT:  Ms. Kellman?
25            MS. KELLMAN:  It's one of those rare occasions,

PROCEEDINGS 4

Judge, where we're in agreement.  I've been trying to marshal the forces on the dark side over here, and it appears that we will have a proposal for the government's consideration in the next day or so, and hopefully we can agree on a joint proposal and get that to the Court as a proposed order in short order.

THE COURT:  All right.  Thank you.  And we adjourned?

COURTROOM DEPUTY:  To July 11th, Judge.

THE COURT:  Okay.  So we need another date in July.

COURTROOM DEPUTY:  July 14th.

THE COURT:  All right.

COURTROOM DEPUTY:  Eleven.

MS. KELLMAN:  July 14th is good.

THE COURT:  Eleven a.m.

MS. KELLMAN:  Judge, I did want to just put on the record, we've had a lot of difficulty with my client's -- the actual conditions of his confinement, and I do want to report that they have not improved at all.

My client has never been allowed to call counsel, no matter how many requests we've made.  He's never ever been allowed to call his attorneys.  There's never been a time that's convenient for the BOP to arrange for him to make a phone call.  He's not been able to call his family in the last 30 days, as far as I can tell from his family's report.

They have finally actually stopped giving him the

PROCEEDINGS 5

wrong medication, which was making him very, very ill.

And my mail, which I now gather is from time to time getting through, is always opened and always pre-read, even though there's a label on it that says it's attorney's mail, it should not be opened except in the presence of counsel.

It takes sometimes as much as three to four weeks for him to receive my mail, and the same for me his mail. He'll send me a letter dated May 15th and I get it a full month later.

I've talked to the BOP about it. I've written to the BOP about it. Not a single phone call has been returned and not a single e-mail has been responded to.

We are exploring 2241, bringing a formal lawsuit against the institution in connection with my client's deprivation of his right to counsel and just his due process rights. I mean, he is being treated not like any American prisoner I've ever seen.

And no matter what we try to do, we're not able to make any progress at the MDC with him. If anything, it's gotten worse. We now can't even wear watches to the institution, so we can't say to the Court it's taken an hour for us to get upstairs, an hour for them to produce our client, 15 minutes to meet with him, and another hour to get back out of the institution. Now we can't say that with accuracy, because they've taken our watches away from us.

PROCEEDINGS 6

1    So I don't know what else they can do, I would say,
2 except prevent us from visiting, but they've even tried that,
3 because now my federal identification is no longer good in a
4 federal institution.  I have to get state ID in order to enter
5 a federal prison.
6    I've never had state ID, because I don't go into
7 state courts.  So I'm now in the process of getting state
8 identification so that I can visit my federal prisoner in
9 federal prison, where they don't recognize my federal
10 identification.
11    I don't know how much more difficult they can make
12 it, but I just don't want my silence to indicate that things
13 are fine at the MDC.  They are not.
14    I am told that the marshals in the BOP have agreed
15 to transfer my client to the MCC, where they actually have a
16 SAMs unit which functions in a normal -- you know, restrictive
17 but normal fashion for SAMs units, which MDC does not have,
18 from what I'm told.
19    THE COURT:  Do we have any idea when that's --
20    MS. KELLMAN:  No.  I'm told there's just no bed.
21 I'm sure that when the fellow from overseas who's taking a
22 cruise across the oceans right now, when he gets here they'll
23 find a bed, but right now I'm told there's still no bed for my
24 client.  And so, while there is an agreement in theory,
25 there's no place for him to sleep.

1 That's my report. I don't know what else to do
2 besides file a lawsuit. That's what we're contemplating. I
3 just wanted to bring the Court up to speed.
4     THE COURT: All right. Okay. Anything else?
5     MR. DuCHARME: Nothing from the government, Your
6 Honor.
7     MS. KELLMAN: Nothing. Thank you, Judge.
8     THE COURT: All right. Then we're adjourned to July
9 14th at 11 a.m. Because of the need to prepare and to review
10 the classified and unclassified information and because this
11 case is considered a complex case, the time between today's
12 date and the next court date will be excluded from the
13 computation of the speedy trial period, and this is required
14 by the ends of justice. We are adjourned.
15     MS. KELLMAN: Thank you, Judge.
16     MR. DuCHARME: Thank you, Your Honor.
17     (Whereupon, the proceedings were concluded at 11:17
18 a.m.)

8

1    I certify that the foregoing is a correct
2    transcript from the record of proceedings in the
3    above-entitled matter.
4
5                    _____
6                    Sherry Bryant, RMR, CRR
                     Official Court Reporter

SHERRY BRYANT, RMR, CRR