UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA

    -against-                                                 12 Cr. 661 (SLT)

ALI YASIN AHMED,

              Defendant.

-----------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO SUPPRESS HIS INVOLUNTARY STATEMENTS

### ARGUMENT

**I. MOTION TO PRECLUDE THE GOVERNMENT FROM USING THE DEFENDANT'S STATEMENTS**

It is a long standing and fundamental principle that "a confession, in order to be admissible, must be free and voluntary." *Bram v . United States*, 168 U.S. 532, 542 (1897). A confession is involuntary, and therefore inadmissible, if it is obtained by "techniques and methods offensive to due process, or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.' " *Oregon v. Elstad*, 470 U.S. 298, 304, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (citation and internal quotation marks omitted). "As with determining whether a defendant was in custody, the inquiry into voluntariness is objective. It asks whether, based on the totality of circumstances, "the government agents' conduct 'was such as to overbear [a defendant's] will to resist and bring about confessions not freely self-determined.' " *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir.1993) (*quoting United States v. Guarno*, 819 F.2d 28, 30 (2d Cir.1987)). Factors relevant to this determination include "the type and length of questioning, the defendant's physical and mental

capabilities, and the government's method of interrogation." *United States v. Okwumabua*, 828 F.2d 950, 953 (2d Cir.1987); *see Deskovic v. City of Peekskill*, 894 F.Supp.2d 443, 457–58 (S.D.N.Y.2012). The government must prove that a confession is voluntary by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

18 U.S.C. § 3501 governs the admissibility of confessions in federal criminal prosecutions. Subsection (a) of section 3501 states that a confession is admissible in evidence if it is "voluntarily given." 18 U.S.C. § 3501 (a). Subsection (b) lists the following five factors to be considered by the trial judge in determining the issue of voluntariness:

(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,

(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,

(3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,

(4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and

(5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501 (b). In addition to providing for the exclusion of involuntary confessions, 18 U.S.C. § 3501 includes another distinct basis for excluding a confession. Under 18 U.S.C. § 3501 (c), confessions must also be excluded if the detainee is not brought before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States within six hours after "arrest or other detention", and the delay is not found to be reasonable. 18 U.S.C. § 3501 (c); *see also United States v. Perez*, 733 F.2d 1026, 1031 (2d Cir. 1984) ("[S]ection 3501 advances two distinct bases for excluding a confession. The first, as stated in subsection (a), is a lack of voluntariness. The second, according to subsection (c), is delay of greater than six hours found not to

be reasonable." *See also* Rule 5 (a)(1)(B) of the Federal Rules of Criminal Procedure ("A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise.")

The suppression of statements that are obtained as a result of torture is also required under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (June 26, 1987) (the "Convention"), to which the United States is a signatory.[1] Under Article 15 of Part I of the Convention,

> Each State Party shall ensure that any statement which is established to have been made as a result of torture shall not be invoked as evidence in any proceedings, except against a person accused of torture as evidence that the statement was made.

United Nations Convention Against Torture, Part I, Article 15.

Mr. Ahmed made three sets of involuntary statements. The first set, made to Djiboutian law enforcement, was the product of torture. The second and third sets of statements were made, respectively, to unidentified agents of the United States government who did not advise Mr. Ahmed of his rights, and to F.B.I agents who advised Mr. Ahmed of his rights. The government is seeking only to use the third state of statements, under the pretense that these statements were voluntarily made because Mr. Ahmed signed an "Advice of Rights" form. These statements must be excluded, as the coercion from the first interrogation, together with the conditions and circumstances of his confinement, clearly overbore Mr. Ahmed's will to consider whether or not he had a choice other than to cooperate with these interrogations.

"When a prior statement is actually coerced, [(1)] the time that passes between confessions, [(2)] the change in place of interrogations, and [(3)] the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Elstad*, 470 U.S. at 310, 105

---

[1] The Convention was signed by the United States on April 18, 1988 and ratified on October 21, 1994.

S.Ct. 1285. Here, given that Mr. Ahmed's confession to the Djiboutian authorities was coerced, each of the three *Elstad* factors favors suppressing his later statements to the U.S. government.

Mr. Ahmed's statements to U.S .government agents were made in the days and weeks following his torture by Djiboutian officials. Throughout these interrogations, Mr. Ahmed remained in the custody of his Djiboutian torturers, imprisoned in the same jail cell, without contact with his family or consulate and without any semblance of due process of law. Throughout these interrogations, one of Mr. Ahmed's torturers was present and in the room, monitoring the process and the information Mr. Ahmed shared. As long as Mr. Ahmed remained in Djiboutian custody, the psychological torture continued and the threat of physical torture, and even death, was always present. If Mr. Ahmed was ever to get out of Djiboutian custody, the only option presented to him was to cooperate with the U.S. government. For this reason, his statements to the F.B.I agents were involuntary and must be suppressed.

The fact that Mr. Ahmed's subsequent statements to F.B.I. agents was made after he signed an "Advice of Rights" form, does not, under all of the countervailing circumstances, render these statements voluntary. When the government contends that a defendant has voluntarily waived his *Miranda* rights, it must prove the voluntariness of the waiver by a preponderance of the evidence. *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 2608 n. 1, 159 L.Ed.2d 643 (2004) (*citing Colorado v. Connelly,* 479 U.S. 157, at 169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The voluntariness test governing a *Miranda* waiver is essentially the same test applicable to the due process inquiry concerning the voluntariness of confessions themselves. A defendant's decision to relinquish his Miranda rights must be voluntary, knowing and intelligent. Thus, relinquishment

> must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (citations omitted*); see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). Factors relevant to the totality of the circumstances are: the characteristics of the accused, such as his experience, background, age and intelligence; the conditions of interrogation; and police conduct, such as physical abuse, handcuff restraint, and psychologically coercive tactics. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997); *Green v. Scully*, 850 F.2d 894, 901 (2d Cir.1988)

In the present case, at the time he was presented with the "Advice of Rights" form, Mr. Ahmed had already made two involuntary statements without the benefit of counsel. Before the F.B.I.'s arrival, Mr. Ahmed had been held incommunicado from his family and country for over a month. During that time,, he was kept in the same unbearably hot cell, clothed in the same dirty t-shirt and underpants, where he was fed a meager diet and drank water from the toilet that left him sickened and in pain. He was brutally tortured, and witnessed the brutal torture of others. His detention was apparently indefinite, and without recourse. He had not been formally charged, and did not know if there were any charges pending against him. He had not seen a judge or been provided with an attorney. These torturous and coercive conditions persisted during and after Mr. Ahmed's interrogation by the F.B.I., and did not abate until Mr. Ahmed was officially transferred into United States custody.

When the F.BI. arrived, Mr. Ahmed asked them to make good on the rights contained in the "Advice of Rights" form and provide him with an attorney. The agents told him that, according to the Djiboutians, no attorney was available. Upon learning that the provision of an attorney was under the control of his Djiboutian captors, who had already tortured him on several occasions, Mr. Ahmed understood that he had no real freedom of choice. Faced with the possibility that the F.B.I. agents would leave him in the custody of the Djiboutians if he did not sacrifice his rights and speak to them, Mr. Ahmed agreed to continue the interrogation without an attorney.

The statements Mr. Ahmed made were involuntary and the product and must be suppressed on that basis under 18 U.S.C § 3501(a), *Oregon v. Elstad* and *Miranda v. Arizona*. The statements must also be suppressed as they were obtained during a period of unreasonable delay in bringing the defendant before a magistrate or judge after arrest, detention, or indictment in violation of Federal Rule of Criminal Procedure 5(a)(1)(B) and 18 U.S.C. § 3501(c). Finally, the statements must be suppressed as they were obtained in violation of Part I, Article 15, of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (June 26, 1987), to which the United States is a signatory.

II. MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO IDENTIFY ANY AND ALL WITNESSES AND EVIDENCE THAT THEY LEARNED OF DURING THE INTERROGATION OF THE DEFENDANT

Pursuant to Rule 12(b)(4) and Rule 16 of the Federal Rules of Criminal Procedure, Mr. Ahmed respectfully requests that the Court issue an order directing the government to specify in detail any witness(es) or evidence about which it became aware, either directly or indirectly, through the unlawful interrogation of the defendant that is described above. This information is necessary to enable the defense to move for the exclusion of the testimony of such witness(es) and the suppression of evidence, should the government elect to call such witness(es) or offer such evidence at trial.

Dated:       September 18, 2014
               Brooklyn, New York

                                         Yours, etc.

                                         SUSAN G. KELLMAN, Esq.
                                         SARAH KUNSTLER, Esq.
                                         EZRA SPILKE, Esq.
                                         Counsel for
                                         ALI YASIN AHMED
                                         25 Eighth Avenue
                                         Brooklyn, NY 11217
                                         (718) 783-8200