# Law Offices of Susan G. Kellman
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • KELLMANESQ@AOL.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

March 31, 2015

Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:    *United States v. Ali Yasin Ahmed*
                       12 Cr. 661 (SLT)

Dear Judge Townes:

Please accept this letter as a renewal of the defendants' joint motion for a taint hearing with respect to evidence derived from statements that were unlawfully obtained from our clients or that was otherwise the result of our clients' illegal arrest.

**Background**

In September of 2014, the defendants filed motions to suppress the statements they made while in Djiboutian custody. (ECF Nos. 99-101.) We also moved for a pre-trial "taint hearing at which the government bears the burden of demonstrating that none of the evidence it seeks to produce at trial is the product of either the illegal interrogation or the illegal arrest." (ECF Nos. 103, 123, 129-1, Yusuf Br. At 51.)

On October 3, 2014, the government responded to the defendants' motions to suppress, stating that the government would be calling "multiple witnesses" who would "establish that the defendants validly waived their *Miranda* rights" and that their statements were therefore admissible. (ECF No.105.)

Thereafter, the government advised the parties and the Court that it would *not* seek to introduce the defendants' statements at trial. And on December 23, 2014, in a memorandum submitted in opposition to the defendants' motions, the government confirmed that it would *not* seek to use those statements, either "in its case-in-chief, or to impeach the defendants should they testify." (ECF No. 153, p. 69.) The government also made the representation that it had "no intention of offering any evidence derived from the defendants' statements at trial." (Id.)

On this basis, the Court denied the defendants' motions to suppress as moot. The Court also denied the defendants' motion for a taint hearing because the derivative evidence had not been identified with particularity. In such cases, Court reasoned, citing

March 31, 2015
Honorable Sandra L. Townes
Page 2 of 3

precedent, "allegations of possible taint are best resolved post-trial." (ECF No. 228, p. 56.) The Court denied this motion without prejudice, inviting the defendants to request a pre-trial "taint" hearing provided we have "any reasonable basis to believe that specific portions of the Government's evidence are fruits of the poisonous tree and make a particularized request (ECF No. 228, p. 57.)

**Identification of the "tainted" evidence**

The taint in this case is so pervasive that it is almost impossible to separate from the case in its entirety. For example, in the "Background" section of the Court's recent decision on our motions the Court wrote that "the defendants were on their way to Yemen to join al-Qaeda." This information is presented in the decision as a "fact." Significantly, however, this statement is wholly derived from a defendant's involuntary statements allegedly made in Djibouti. While the defendants were not initially able to identify with particularity any specific evidence tainted by the primary illegality of their involuntary statements, as the case unfolds, we are in a better position to identify at least some of that evidence. Upon information and belief, the following evidence was derived from these statements:

- Our clients' alleged nicknames, as enumerated in the indictment;
- Our clients' email accounts and account passwords; and,
- The identification of Mohammed Yusuf as the alleged narrator of the "Inspire the Believers" video.

On this basis, we request a pre-trial "taint" hearing. However, as a threshold matter, in order to have such a hearing, the "primary illegality" must first be established. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *see also Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013). For this reason, it was error to deem the defendants' suppression motion to be moot, despite the government's representation that it will not use the defendants' statements, and a suppression hearing must be held in addition to a taint hearing, unless and until the government is prepared to withdraw each of these offending violations – whether in terms of a statement or otherwise.

**Photographs of our clients taken while they were in Djiboutian custody**

We further move to suppress photographs of our clients that were taken while they were in Djiboutian custody, as well as any testimony about said photographs.[1] While the photographs of our clients are not derivative of their unlawfully obtained statements, these photographs are nonetheless derivative of their unlawful arrest and detention. The lawfulness of this arrest is an issue given the defendants' contention that their arrest was the result of a joint investigation between the United States and the

---

[1] These photographs were used during the government's preparation of the witnesses who testified pursuant to Rule 15, and during the depositions for the purposes of identification.

March 31, 2015
Honorable Sandra L. Townes
Page 3 of 3

Djiboutian authorities.[2] Again, a hearing on this matter is required; unless the government is prepare to agree that it will not offer any such evidence.

      The Second Circuit has implicitly adopted the "joint venture" doctrine, *United States v. Yousef*, 327 F.2d 56, 146 (2d Cir. 2003), but has yet to either define its precise contours or explicitly determine whether it is the defendant's burden to establish that a joint venture existed or the government's burden to prove the it did not. In *United States v. Abdel Bary*, 978 F.Supp. 2d 356, 366-8 (SDNY 2013), however, Judge Kaplan assumed without deciding that the burden was on the Government, and conducted a hearing to resolve whether or not there was a joint venture. Putting the burden on the Government makes sense, since the Government, not the defendant, has access to the materials and witnesses relevant to the inquiry.

      Similarly, in *United States v. Abu Ali*, 528 F.3d 210, 230 & n. 5 (4th Cir. 2008) (a case cited in Abdel Bary), the district court heard nearly fourteen days of testimony before making the determination that "the United States played no role in the in the arrest or detention of Abu Ali, and the `Saudi government was in complete control of Mr. Abu Ali while in custody.'" (Notably, though the district court's finding was upheld on appeal in *Abu Ali*, the appeals court was not unanimous. A dissenting judge would have found a joint venture based on the facts that U.S. agents had proposed the questions posited by the Saudis and that the interrogation was conducted by the Saudis in the presence of, and in consultation with, the U.S. officials. 528 F.3d at 230 & n. 6) A hearing is in order here.

      Thank you for your kind consideration of this letter.

                                      Respectfully submitted,

                                      Susan G. Kellman
                                      Sarah Kunstler
                                      Ezra Spilke
                                      Attorneys for Ali Yasin Ahmed

---

[2] See Ecf # 101-1, ¶ ¶ 9-15 (E.g., ¶ 10, On or about August 24, 2012, when Mr. Yusuf was first questioned by American officials, he was informed by Djiboutian authority that he was not being held "because of Djibouti," but, rather, "because of the U.S.").