SPECIAL IMMIGRATION APPEALS COMMISSION

Field House,
Breams Buildings
London
EC4A 1WR

Wednesday, 16th January 2013

BEFORE:

THE HONOURABLE MR JUSTICE IRWIN
UPPER TRIBUNAL JUDGE GLEESON
SIR BRIAN DONNELLY

BETWEEN:

H2

Appellant

and

THE SECRETARY OF STATE FOR THE HOME DEPARTMENT

Respondent

- - - - - - -

MR F SAIFEE ( instructed by HMA Solicitors) appeared on behalf of the Appellant.

MS K GRANGE (instructed by the Treasury Solicitor) appeared on behalf of the Secretary of State.

MS M PLIMMER (instructed by the Special Advocates Support Office) appeared as Special Advocate.

- - - - - - -
PRELIMINARY ISSUE
- - - - - - -

Transcribed by Harry Counsell
Court Reporters
61 Southwark Street
London
SE1 0HL
Tel: 020 7269 0370

- - - - - - - - -

1   MR JUSTICE IRWIN: Yes, Mr Saifee.
2   MR SAIFEE: Sir, I appear on behalf of the appellant and I would like to renew my
3       application for an adjournment of the hearing today. I rely on the two witness
4       statements of my instructing solicitor, Saghir Hussain; to the extent that the second
5       witness statement dated yesterday is served out of time, I seek permission to adduce it
6       and rely on it.
7   MR JUSTICE IRWIN: You can certainly adduce it and rely on it.
8   MR SAIFEE: I am grateful. Sir, essentially, there are three reasons for seeking this
9       adjournment. Firstly, H2's whereabouts in a New York prison were first revealed about
10      three and a half weeks ago. Despite my instructing solicitors' best efforts, as carefully
11      documented in the witness statements, they have been unable to take detailed
12      instructions or any evidence whatsoever from H2 himself on either of the two
13      preliminary issues. The telephone call facilitated last night by the US prosecutor was
14      helpful, but, I say, was subject to serious limitations, including the time limit on the
15      telephone call and issues about the privacy of the call, which, perhaps, unsurprisingly,
16      resulted in my client being unable to give detailed instructions to us. It certainly was
17      no cure for his inability to provide any evidence in the form of a witness statement in
18      relation to either of the issues. Nonetheless, it is now understood from the brief
19      instructions that we took last night that it is his contention that the first appeal notice
20      from 5th October 2010 was valid, given that he had authorised his mother at some time
21      prior to to sign it, and also he has confirmed expressly to us that he wants to appeal and,
22      if that requires an extension of time that he needs to apply for it.
23          The second reason is that, although H2 may have authorised his mother to bring
24      this appeal in the first place, it does not follow, I say, that this is in some way her
25      appeal. This Commission does not need H2's instructions or his evidence. I say that
26      both of those elements are crucial to a fair determination of the matters today.
27          Thirdly, sir, I say that British citizenship would make a significant difference to
28      this young man facing very serious criminal charges in New York. There is a danger
29      that proceeding today important detail might be lost, if his evidence and instructions are
30      presented to the Commission, second or third hand, through ourselves or the US
31      Attorney, respectively.
32  MR JUSTICE IRWIN: Yes.
33  MR SAIFEE: Sir, that, in essence, is my application.
34  MR JUSTICE IRWIN: Attached to the second witness statement of your instructing solicitor
35      is a further notice of appeal or is that merely a further copy of the original?

1  MR SAIFEE: No. Sir, there was some reference to it in the first witness statement, there was
2  an attempt to get a signed notice of appeal, it was not understood at that stage when it
3  was sent to him what his instructions were about authorisation in relation to the first
4  appeal. The second notice of appeal was received yesterday morning. Yesterday
5  evening, once we had spoken to him, he said to us that he thought that he had
6  authorised his mother to bring the first appeal. Therefore, it is my position in relation
7  to the first preliminary issue that that appeal notice is valid through him having
8  authorised his mother.
9  MR JUSTICE IRWIN: You stand or fall on the October appeal?
10 MR SAIFEE: Yes. I understand that that is disputed. The Treasury solicitors say that, well, it
11 is not a valid notice of appeal, his mother was involved in it, he was not. But the issue
12 of fact there, I say, is whether or not he had authorised his mother to authorise my
13 instructing solicitors, it is plain from the SIAC procedural rules that an appellant does
14 not need to personally sign an appeal notice, it can be signed by a representative.
15 MR JUSTICE IRWIN: I do not need you, Mr Saifee, to make the argument now. What I
16 think we do need to know is whether you are, once and for all, standing over that notice
17 of appeal, because the very worst outcome would be that you test that and then you say
18 later, "Oh well, he is going to appeal, anyway, and ask for time to be extended". Do
19 you follow me?
20 MR SAIFEE: Yes.
21 MR JUSTICE IRWIN: We have to know where we are now.
22 MR SAIFEE: Sir, I can only put it in the way that these instructions have reached us, in the
23 slightly unsatisfactory way in which they have reached us, which is that he said that he
24 authorised his mother to do that. We have not had the chance within that half an hour
25 telephone call to explain the associated issues in relation to that. An attempt was,
26 obviously, made earlier on in January to obtain a signed appeal notice himself. You
27 will have seen my skeleton argument which indicates that that would have made one of
28 the issues academic, but, sir, I can just convey his instructions on that. I understood it
29 that he was standing by 5th October.
30 MR JUSTICE IRWIN: Your application is for an adjournment, but I should make it clear that
31 we have, obviously, discussed this between ourselves. The Commission needs to know
32 - and, essentially, it is a legal point - whether you stand over the mother's signed form
33 or whether you seek to introduce a further form; we need to know that for sure within a
34 short time, so we can consider that in a moment. There is nothing else that you want to
35 add on the principal application.
36 MR SAIFEE: Sir, no.

1  MR JUSTICE IRWIN: Shall we ask the special advocate if there is anything to be said?
2  MS PLIMMER: No, thank you.
3  MR JUSTICE IRWIN: Ms Grange.
4  MS GRANGE: Sir, I should make clear that we received a copy of this witness statement
5  about 15 minutes ago. We were just handed it. We have not had much time to consider
6  the latest evidence, although it does trouble us, in terms of the contents of it, because, if
7  one looks at paragraph 6 of the latest statement, based on the 35-minute conversation
8  that was had, it is made clear in the fifth line that he said that he had authorised his
9  mother to sign the appeal notice dated October 2012. If one looks at the mother's
10 evidence that has been served in this appeal, it appears at page 25 of the open bundle
11 behind tab 6 ... We should pick it up at page 24, behind tab 6.
12 MR JUSTICE IRWIN: Yes.
13 MS GRANGE: This is the mother's evidence about the contact that they had with him after
14 the deprivation notice was served. It states at paragraph 30 at the bottom of that page,
15 "By the time we were able to get in touch with him the 28-day period referred to by Mr
16 Larkin on the phone was over. It was past July 15th when we spoke to him and it was,
17 possibly, on 20th July that we spoke to him. I spoke with him on the phone. I asked
18 him why he had not been in contact", etc. Then at the end of that paragraph, it says,
19 "He said he wanted to take action and appeal. We planned to speak again to finalise the
20 documents for the appeal. However, that was the last conversation that we had".
21 MR JUSTICE IRWIN: Yes.
22 MS GRANGE: Sir, in our submission, those two statements are inconsistent, that he has
23 authorised her to sign the appeal notice dated October 2012 and that the mother has
24 stated that they were planning to speak again, but that was the last conversation that
25 they had. This highlights the concerns that we have raised in the skeleton argument
26 about issue number one. We do not accept that you should adjourn issue one. We
27 think that issue one should be determined today, in that you have ample evidence to
28 conclude whether or not the SIAC rule, which is very specific as to what it requires,
29 was or was not complied with. That is an important preliminary issue to determine.
30 That would then set the tone for the rest of this appeal and it would appear to be my
31 learned friend's position that they are not abandoning that first appeal, they want to
32 press ahead. If that is right, and I would like to address you in closed on this issue as
33 well, we would say that SIAC should consider whether, in fact, it goes on to determine
34 preliminary issues one and two today. We would oppose an adjournment.
35 MR JUSTICE IRWIN: You want to address us in closed before the adjournment decision is
36 taken?

1  MS GRANGE: Yes.
2  MR JUSTICE IRWIN: Is there anything else that you want to say in open?
3  MS GRANGE: No.
4  MR JUSTICE IRWIN: Just give us a moment. (Conferred) We will go into closed session
5        so we can listen to your representations.
6              (Hearing resumed in closed session
7              and then returned into open session)
8  Mr JUSTICE IRWIN: We first want to check, Mr Saifee, whether there is anything that you
9        want to add.
10 MR SAIFEE: Yes, sir, if I may, very briefly. Can I say that there are five points that I would
11       like to make? The first is in relation to what my learned friend said in open just before
12       we rose. Really, that is exactly the point that I am talking about. The discrepancy that
13       my learned friend sought to indicate between the instructions my solicitor had taken
14       last night and the witness statement of the mother, that is exactly the kind of confusion
15       that results from us not being able to take direct instructions and evidence from our
16       client in New York. The second point is that, following the conversation we had last
17       night with H2, we have serious concerns about what records the Djiboutians may have
18       taken; thirdly, we have very serious concerns about how any interrogations took place
19       and whether there was a threat of torture preceding any of those.
20 MR JUSTICE IRWIN: I do not follow that point.
21 MR SAIFEE: Sir, my instructing solicitor and I have not seen any of the closed material in
22       this and we are left to guess what may be there and what may be said. These are some
23       of the issues arising from our client's perspective.
24 MR JUSTICE IRWIN: What has that to do with the two first preliminary issues? How could
25       that affect the two first issues?
26 MR SAIFEE: Well, in relation to whatever may have been said ... Well, I will move on.
27       Time appears to be an important point here and I say that, even in the open evidence,
28       the application in the US to unseal the indictment, even that itself is unclear about the
29       specific dates. It refers to early August.
30 MR JUSTICE IRWIN: As to when ...
31 MR SAIFEE: As to when H2 may have first been arrested. These are important issues. I say
32       that even the application to unseal there is not clear and H2 should at least have the
33       opportunity of putting forward a case on it. I say that in relation to this application for
34       an adjournment, H2 is not simply being asked to aim at a hidden target, he is not being
35       even given the opportunity if an adjournment would be refused to even advance his
36       instructions and evidence against it.

1   MR JUSTICE IRWIN:  Yes. Any more?

2   MR SAIFEE:  Sir, no. I am very grateful. Thank you.

3   MR JUSTICE IRWIN:  (Conferred) The application to adjourn succeeds. It is necessary to
4   be clear about what time is needed on the adjourned hearing and about when it should
5   be listed. In due course I will give detailed directions, but we need the framework to be
6   based on a clear understanding of time estimate and date. It will be our desire to list
7   this before the end of July, at the very latest. It is in no one's interests for this to go off
8   beyond that. Recognising the practicalities for the appellant's lawyers in taking
9   instructions, nevertheless, there has to be a clear end point when this matter is resolved.
10  It is only two preliminary issues. We have to allow for the possibility that a further
11  hearing will be needed after that.

12  What I will direct is this. There will be an adjournment. Within seven days I
13  would ask for the parties to submit jointly, if at all possible, agreed proposed detailed
14  directions. That should include a directions hearing at some stage before Easter. I can
15  deal with that on my own. It will not require my colleagues to be present, but I can
16  anticipate that there are matters here which, both in open and, possibly, in closed, will
17  need discussion in detail. The timetable should include a directions hearing. Our own
18  view was that a day should see this case through when it comes to the two preliminary
19  issues outstanding, but, if anyone differs from that, I would like to hear that today.

20  MR SAIFEE:  No.

21  MR JUSTICE IRWIN:  Good. We will aim for a day's hearing. Dates of availability of
22  counsel I will certainly look at but no guarantees. I think that that is all we need to say,
23  save for this. We are going to need to reassemble in closed to raise another point
24  before the parties disperse.

25  MR SAIFEE:  Before you rise, could I also make an application on behalf of H2 and that is to
26  lift the anonymity order? As I understand it, the anonymity order is made in order to
27  protect a potential appellant. In the US, currently, the indictment has been unsealed.
28  The proceedings against him in the US, at least, are entirely public and it is his express
29  instructions to us yesterday on the telephone that he wants to lift the order.

30  MR JUSTICE IRWIN:  You can make that application at the directions hearing, because I
31  think that that is something that all parties might want to think about and it is something
32  that I saw only arose very recently in what you had to say. I am not going to deal with
33  that today, Mr Saifee, but you can deal with it in due course.

34  MS GRANGE:  I am happy to indicate now we are very happy for it to be lifted.

35  MR JUSTICE IRWIN:  You are?

36  MS GRANGE:  We are.

1  Mr JUSTICE IRWIN: Do you want to say anything?
2  MS PLIMMER: No objection, if that is what the appellant wants.
3  MR JUSTICE IRWIN: (Conferred) I would rather thought there might be more to it than that.
4  If you are content, then we will lift the anonymity today. We need to go into closed. It
5  will not take long.
6  MS GRANGE: Sir, just before we rise, sir, I would urge the Commission to request that the
7  open team make their position clear as to which appeal it is that they are proceeding
8  with and make that position clear either later today or within the next day or so.
9  MR JUSTICE IRWIN: I think that I have already said within seven days we need to know
10  whether - you need to make your election, are you proceeding on the original notice,
11  are you proceeding on the second or are you going in the alternative.
12  MR SAIFEE: Sir, can I just say in respect of that point, that does require us to advise our
13  client in relation to the two possible outcomes. We were told expressly by the US
14  prosecutor yesterday, when we first picked up the phone, that the telephone
15  conversation we had had was entirely exceptional and after that phone call we would
16  not have access to H2 in that way again and we would have to go through normal
17  channels, which we understood to mean further delay in the sense of going through the
18  US Defence Attorney, possibly, even having to go to the United States actually to speak
19  to him. Given that this is a central issue that could determine the fate of the whole
20  appeal, sir, I would say that it would be fair for us to first at least be able to advise our
21  client on that point before we make an election.
22  MR JUSTICE IRWIN: Well, what we cannot have and what I will not permit is exhausting
23  the first notice of appeal and then starting again with the second. If you are proposing
24  to stand over both notices of appeal in the alternative, then you must say that that is
25  what you intend to do within seven days. You can withdraw from that position
26  subsequently very easily. What we cannot have is doubt on the point so that everyone
27  cannot address it. You will have to make your minds up and what your advice is going
28  to be and let us know within seven days whether you intend to stand over both notices
29  of appeal. It is a legal point. You can take instructions on it and withdraw from one or
30  both subsequently, what you cannot do is seek to maintain both subsequently.
31  MR SAIFEE: Sir, the likely outcome is exactly as the Commission has outlined, that is likely
32  to be our position within seven days, unless, of course, we are able to take instructions
33  before then.
34  MR JUSTICE IRWIN: I think that it is much better that you indicate that you are intending to
35  stand over both until such time as you indicate that you withdraw from one or the other
36  MR SAIFEE: Yes.

1  MR JUSTICE IRWIN: There may come a time when I will direct you to make your election,
2  but for the moment I think the working assumption will be that you will seek to run
3  both in parallel and, if one fails, the other will be sought to be maintained.
4  MR SAIFEE: Yes, exactly right. That is our point.
5  MR JUSTICE IRWIN: Confirm that, please, in writing within seven days. There is nothing
6  lost by that, because I cannot think of any evidence or preparation that will be added to
7  by taking that approach and it means that we have got certainty.
8  MR SAIFEE: Yes, quite right.
9  MR JUSTICE IRWIN: Let's go into closed, please.
10                        **(Hearing resumed in open hearing**
11                              **and then concluded)**