1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 12-CR-00661(SLT)
                                   :
         -against-                 :
                                   :
                                   : United States Courthouse
                                   : Brooklyn, New York
ALI YASIN AHMED, MADHI HASHI       :
and MOHAMED YUSUF,                 :
                                   : Tuesday, February 17, 2015
         Defendants.               : 3:00 p.m.
                                   :
                                   :
                                   :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
               BY:  RICHARD M. TUCKER, ESQ.
                    Assistant United States Attorney

 For Deft. Ahmed:    SUSAN G. KELLMAN, ESQ.


 For Deft. Hashi:    KARLOFF C. COMMISSIONG, ESQ.

 For Deft. Yusuf:    DAVID STERN, ESQ.
                     JANE SIMKIN SMITH, ESQ.


Court Reporter:  Stacy A. Mace, CRR, RPR
                 Official Court Reporter
                 E-mail:  smacerpr@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

SAM      OCR      CRR      RPR

Proceedings                                        2

1        THE COURTROOM DEPUTY:  Criminal Cause for Status

2   Conference, Docket number 12-CR-661, The United States of

3   America versus Ali Ahmed, Madhi Hashi and Mohamed Yusuf.

4        Counsel, please state your names for record

5   beginning with the government.

6        MR. TUCKER:  Rich Tucker for the United States.

7   With me today is Special Agent Mary Boese from the Federal

8   Bureau of Investigation.  Good afternoon, Your Honor.

9        THE COURT:  Good afternoon.

10        MR. STERN:  David Stern for Mohamed Yusuf.  Good

11   afternoon.

12        THE COURT:  Good afternoon.

13        MS. KELLMAN:  Susan Kellman for Ali Ahmed.  Good

14   afternoon, Your Honor.

15        THE COURT:  Good afternoon.

16        MR. COMMISSIONG:  Karloff Commissiong for Madhi

17   Hashi, Your Honor.  Mr. DeMarco had a trip planned before this

18   scheduled court.

19        THE COURT:  Yes; good afternoon.

20        MS. SMITH:  Jane Simkin Smith, also for Mohamed

21   Yusuf.

22        THE COURT:  All right.

23        THE COURTROOM DEPUTY:  And, Judge, we have a Swedish

24   interpreter for the defendants.  Please state your name for

25   the record.

Proceedings                                    3

1        THE INTERPRETER:  Magna Czagani.

2        (Interpreter sworn.)

3        THE COURT:  All right, good afternoon.  We have a

4    status conference this afternoon.  Now, Mr. Tucker.

5        MR. TUCKER:  Thank you, Your Honor.

6        And first off, I appreciate the Court scheduling

7    this on relatively short notice.  It seemed to make sense for

8    us all to get together today to talk through a few logistical

9    points with the upcoming overseas depositions.

10       THE COURT:  Yes.

11       MR. TUCKER:  First, I just want to make a record,

12   Your Honor, that today defendants met with their attorneys in

13   a joint defense meeting in the courthouse.

14       THE COURT:  Yes.

15       MR. TUCKER:  Also, we have provided what I

16   understand to be the balance of 3500 material that's

17   disclosable for the two witnesses who will be deposed overseas

18   in the coming weeks.  In addition, and in an abundance of

19   caution, and in light of our discussions last week with

20   respect to the Curcio proceedings for the witness, the

21   government has turned over 302s and notes associated with that

22   witness.  We've turned them over on hard copy form and at

23   Ms. Kellman's request we've provided them in electronic form

24   as well, as well as for another cooperating witness the

25   government anticipates calling at trial.  So a large portion

Proceedings                                           4

1  of the government's 3500 has now been disclosed approximately

2  three months before the commencement of trial in this matter.

3              I understand the Court has requested copies of this

4  3500 as well, in anticipation of the depositions.

5              THE COURT:  Yes.

6              MR. TUCKER:  The parties are working on that and

7  Your Honor will have that well in advance.  If it's all right

8  with the Court, I'll just run through my list of things that I

9  need to check off with the upcoming depositions?

10             THE COURT:  Yes.

11             MR. TUCKER:  So the next relates to the deposition

12 rules.  The rules --

13             MS. KELLMAN:  I just notice, Judge, that the

14 interpreter is not interpreting at all for any of the

15 proceedings.  So I don't know if that's --

16             THE COURT:  Why is that?

17             THE INTERPRETER:  I have interpreted.  Maybe the

18 attorney doesn't have the time to watch me all the time, but I

19 do interpret.

20             MS. KELLMAN:  I haven't seen any interpretation,

21 that's why I raised it.

22             THE COURT:  All right, let me ask.  You're there for

23 Mr. Ahmed and Mr. Yusuf, interpret what I'm saying.

24             Mr. Ahmed and Mr. Yusuf, have you understood what

25 has been said during this hearing?

1           THE INTERPRETER:  He's speaking in a very low voice.

2   He says it would be better if you all would try to speak up a

3   little.

4           MR. TUCKER:  I will speak up, Your Honor.

5           The COURT:  Thank you.

6           MR. TUCKER:  I apologize.  I think that's the first

7   time that's ever been a criticism.  I usually talk too fast.

8           THE COURT:  Well, you talk too fast also.

9           MR. TUCKER:  I'll work on everything, Your Honor.

10          So the first point, Your Honor, relates to the

11  agreement among the parties regarding the conduct for the

12  depositions.

13          THE COURT:  Yes.

14          MR. TUCKER:  The parties have conferred and we've

15  crafted a way to preserve certain objections, while requiring

16  other objections be made contemporaneously during the

17  deposition.

18          THE COURT:  Yes.

19          MR. TUCKER:  That agreement has been formalized in

20  writing and counsel for all the parties have signed.  And so

21  I've presented that to Your Honor's deputy, so that the Court

22  can so order, it if it is acceptable to the Court.  And I can

23  answer any questions the Court has.

24          THE COURT:  All right, I'm just going to ask you

25  just for the record, Ms. Kellman, this is your signature

```
                    Proceedings                      6
```

1    agreeing?

2              MS. KELLMAN:  Yes, Your Honor, it is.

3              THE COURT:  And Mr. DeMarco signed.  Are you aware?

4              MR. COMMISSIONG:  I signed, Your Honor.

5              THE COURT:  Oh, Mr. Commissiong.

6              MR. COMMISSIONG:  I know, that is my handwriting.

7              THE COURT:  I wish you had underlined your name

8    because I -- all right, this is your signature --

9              MR. COMMISSIONG:  It is my signature.

10             THE COURT:  -- Mr. Commissiong?

11             MR. COMMISSIONG:  Yes.

12             THE COURT:  And, Mr. Stern?

13             MR. STERN:  I have signed it, yes.

14             THE COURT:  All right.  And I will sign also.

15             All right, I've seen the agreement regarding the

16   conduct of depositions.

17             MR. TUCKER:  Thank you, Your Honor.

18             Your Honor, the next matter relates to the method in

19   which the witnesses will be sworn in.  Witnesses at both of

20   the locations will be sworn in in a manner consistent with

21   local law, so that perjury or an analog of perjury will

22   attach.  I know that we've had an opportunity to confer with

23   counsel for the parties, and my understanding is that counsel

24   for all three defendants will waive any objection pursuant to

25   Rule 603 regarding oaths for witnesses and agree that the

```
                         Proceedings                    7
```

1        local oath will be sufficient for that purpose.

2                MR. STERN:  That is correct.

3                MS. KELLMAN:  That is correct.

4                THE COURT:  Mr. Commissiong?

5                MR. COMMISSIONG:  Yes, Your Honor.

6                THE COURT:  Thank you.

7                MR. TUCKER:  Your Honor, the next matter for

8        logistics relates to the production of the defendants for

9        purposes of observing and participating in the depositions.

10               THE COURT:  Yes.

11               MR. TUCKER:  As the Court knows, or probably knows,

12       the depositions on the Brooklyn end will take place at the

13       U.S. Attorney's office.  We will be providing a location where

14       the local counsel will be able to sit with the defendants.

15               THE COURT:  Yes.

16               MR. TUCKER:  And the deposition will be live

17       video-streamed so they'll be able to see the, you know,

18       televised image of the witness who's being deposed and,

19       obviously, be able to hear the testimony.  They'll be able to

20       confer with local counsel.  And we've made arrangements so

21       that local counsel will be able to communicate via phone with

22       the lawyers who are overseas, so that there can be

23       coordination regarding strategy and things of that nature.

24               THE COURT:  All right.

25               MR. TUCKER:  The depositions, we are still

Proceedings                                        8

1   finalizing times and locations, although with each passing day

2   we're able to be more and more precise.  As Your Honor knows,

3   there are aspects of this that are outside the U.S.

4   government's control because the witnesses are in the custody

5   of foreign governments.  It's the government's understanding

6   that the first deposition will take place overnight between

7   Sunday night and Monday morning this week.  So we're expecting

8   to start overseas at 9 a.m. Africa time.

9            THE COURT:  Yes.

10           MR. TUCKER:  Which would be 1 a.m. New York time,

11  Monday morning.  And that the deposition would continue until

12  4 p.m. Africa time, which would corollate to 8 a.m. Brooklyn

13  time.  That deposition window --

14           THE COURT:  Yes.

15           MR. TUCKER:  -- is very -- it's very -- it seems to

16  be largely inflexible is the information that we've been

17  provided by the foreign government, that that's going to be a

18  fixed window for the deposition.  This is one of the reasons

19  that the government requested the status conference today so

20  that we could raise this issue with the Court, make sure the

21  Court understands where our window is, and this would be an

22  opportunity for the Court to advise the defendants that in the

23  event that they decline to be produced for that deposition,

24  they will waive their opportunity to observe and participate

25  in that deposition.

Proceedings                                                    9

1          THE COURT:  They cannot, pursuant to the rule,

2    decline to be produced unless they do so in writing.  And if

3    they wish to do so in writing, then that's fine, but I want

4    use of force orders prepared.  I don't think we're going to

5    need them, but the rule, itself, says that the defendant must

6    be produced at the deposition and keep the defendant in the

7    witness' presence during the examination unless the defendant,

8    A, waives in writing the right to be present or, B, persists

9    in disruptive conduct justifying exclusion after being warned

10   by the Court that disruptive conduct will result in the

11   defendant's exclusion.

12          So I don't think we're going to need it, but because

13   of this window, I want you to prepare use of force orders for

14   each day because the rule says must.

15          MR. TUCKER:  I understand, Your Honor.  I will

16   prepare those force orders and present them to the Court for

17   Your Honor's consideration.

18          THE COURT:  All right.

19          MR. TUCKER:  Assuming what I think we all hope that

20   they will not be necessary --

21          THE COURT:  No, I don't think.

22          MR. TUCKER:  -- the FBI, pursuant to the proposed

23   orders that I handed up to Your Honor's deputy earlier, will

24   transport the defendants from the jail facility to the office

25   of the U.S. Attorney's office for purposes of those

Proceedings                           10

1   depositions.  And I had an opportunity to show those proposed

2   take-out orders to counsel, and they've been presented for

3   Your Honor's signature.

4         MR. STERN:  Judge, we understand it's necessary for

5   the FBI to do this because it's not during court hours.

6         THE COURT:  Yes.

7         MR. STERN:  But we want it to be clear and want you

8   to order the government or through the government the FBI not

9   to speak with our clients during this transportation.  Our

10  clients are represented.  They are not waiving their right to

11  be silent, and I want to be sure that there's not later some

12  claim that they had conversations, which were in any way

13  inculpatory.

14        THE COURT:  Well, of course, Mr. Tucker and the

15  government knows that that is not permissible.

16        MR. TUCKER:  I do, Your Honor, and I know that the

17  agents know that too, but in an abundance of caution we will

18  convey that message, once again, to make certain that everyone

19  understands.

20        MS. KELLMAN:  Your Honor, I just want to join in

21  that request, but also mention to the Court that the reason

22  this came up was last week we agreed voluntarily, without the

23  need for subpoena, to have the government send FBI agents to

24  visit with our clients and photograph them.  And we have

25  learned -- and our clients were cooperative through the

Proceedings                                           11

1  process.  We have learned from our clients that they were

2  questioned during that interview -- during that photographic

3  session, and they were asked specific questions that relate to

4  the testimony about scars and tattoos and the like.  So it's

5  for that reason that, while the agents should know better,

6  and, of course, the government, we know, knows better --

7              THE COURT:  Yes.

8              MS. KELLMAN:  -- but we know that that has happened

9  just last week, so we are asking the Court to order that

10  nobody speak to our clients.

11              THE COURT:  Well, I've already ordered that.

12              Anything else?

13              MR. TUCKER:  So, Your Honor, I think that brings us

14  to my last point.  So now understanding that we will acquire

15  force orders and then the FBI will make arrangements to

16  attempt to transport the defendants early enough such that if

17  there is an issue, the Bureau of the Prisons and Marshals and

18  FBI will be able to safely deploy, if necessary, the force to

19  transport the defendants.  Again, hopefully, this won't happen

20  because the most important thing, I think from everyone's

21  perspective, frankly, is that we're able to commence the

22  depositions on time.

23              THE COURT:  Yes.

24              MR. TUCKER:  Because we want to make certain that

25  everyone has adequate time to conclude their examinations.

Proceedings                                12

1    The government is seeking a little bit of guidance from the

2    Court in the event that court intervention is necessary.  I'm

3    recognizing that these are off hours.  I wanted to get some

4    guidance from, Your Honor, if we should contact Your Honor's

5    chambers or however --

6                THE COURT:  I will be there.

7                MR. TUCKER:  Your Honor will be attending the

8    deposition at the U.S. Attorney's office?

9                THE COURT:  Yes.

10               MR. TUCKER:  That resolves that issue, Your Honor.

11               THE COURT:  All right, anything else from the

12   government?

13               MR. TUCKER:  I don't believe so.  That's it.  The

14   government will get you the proposed force orders and your

15   3500 in the next couple days.

16               THE COURT:  All right, Mr. Stern.

17               MR. STERN:  This is really ancillary to what we're

18   talking about now, but the government, as you were just told,

19   has taken photographs of scars or tattoos that our clients

20   have.  We would like copies of those photographs.  And, I

21   assume the government will, I don't mean they've refused to do

22   it at all, but I'm just putting on the record we want copies

23   of those.  And we want to know all of their body parts that

24   were examined because if there are areas that don't have scars

25   or tattoos, we want to know that as well so we won't be having

Proceedings                                          13

1    to have them display themselves in court.

2              What I mean by that, if they examined their whole

3    leg and took a picture of every scar on their leg or their

4    whole arm to photograph every scar on their arm, we just want

5    to know those too.  And that's a discovery request, but one I

6    make now just because it came up.

7              THE COURT:  All right.

8              MR. TUCKER:  Your Honor, we'll certainly turn over

9    everything that's appropriate to be disclosed.

10             MR. STERN:  Thank you.

11             THE COURT:  Is there anything else?

12             MS. KELLMAN:  No, nothing.

13             THE COURT:  Mr. Commissiong.

14             MR. COMMISSIONG:  Yes, Your Honor.

15             Last week I met with Mr. Hashi and Mr. Hashi raised

16   an issue with me.  He stated that he sent a letter to Your

17   Honor informing Your Honor that he no longer wants Mr. DeMarco

18   and myself to represent him.

19             THE COURT:  I did not receive any such letter.

20             MR. COMMISSIONG:  And I spoke to Veronica, it

21   probably just didn't make its way to the Court.  I thought

22   that it was necessary to raise this issue at this -- at this

23   court conference.

24             THE COURT:  Well, I haven't received the letter.  I

25   will look for it or Mr. Hashi can write to me again.  And if

```
                     Proceedings                    14
```

1   there's an issue, I'll schedule a hearing for March 2nd.  We

2   have a scheduled appearance on that date and we'll do that

3   after.

4               DEFENDANT HASHI:  Can I address the Court, please?

5               THE COURT:  Yes, Mr. Hashi.

6               DEFENDANT HASHI:  Last week I sent you, it was on

7   Monday, and I was going to send you another letter today, but

8   this morning I was told that I had court appearance.  So

9   that's why I didn't send you that letter.

10              THE COURT:  I did not receive a letter from you.

11              DEFENDANT HASHI:  I've had a few issues with my

12  lawyers for the past --

13              THE COURT:  I'm not discussing that now.  I said I

14  will have a hearing and, hopefully, I'll have your letter and

15  you said that you were going to send another letter.  So I'll

16  wait for that.

17              DEFENDANT HASHI:  I would have liked that we talk

18  about this before depositions.

19              THE COURT:  No, we're not talking about it until the

20  hearing on March 2nd.

21              DEFENDANT HASHI:  Which is after the depositions.

22              THE COURT:  March 2nd we have a hearing on your

23  request, once I receive it.

24              DEFENDANT HASHI:  Judge, my lawyers, I do not want

25  them to represent me during this trip and I don't want them to

Proceedings                                            15

1   cross-examine these witnesses.

2           THE COURT:  I have scheduled a hearing --

3           DEFENDANT HASHI:  I don't want --

4           THE COURT:  Mr. Hashi, I have scheduled a hearing

5   March 2nd.  We are adjourned if there is nothing else.

6           DEFENDANT HASHI:  Okay.

7           MR. TUCKER:  Thank you, Your Honor.

8           DEFENDANT HASHI:  So I come once to the court

9   appearance and you don't talk to me?  I don't get to talk?

10          THE COURT:  I anticipated you will be sending me the

11  letter.

12          DEFENDANT HASHI:  I've been sitting here two years

13  and a half, I've never spoke.  I've never, ever spoke.  Let me

14  speak.

15          THE COURT:  You may send the letter, Mr. Hashi.

16          THE DEFENDANT:  I never knew that you didn't receive

17  it, though.  Thank you very much.

18          THE COURT:  Thank you.

19          DEFENDANT HASHI:  The first time I speak and you do

20  this, right?  It's an embarrassment.  The defense lawyers --

21          THE COURT:  All right, if there's nothing else,

22  we're adjourned.

23          MR. TUCKER:  Thank you, Your Honor.

24                      (Matter adjourned.)

25